[No. S153917. Aug. 19, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD DUFF, JR., Defendant and Appellant.

COUNSEL

Tonja R. Torres, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GEORGE, C. J.—Defendant James Edward Duff, Jr., was convicted of assault on a child committed with force likely to cause great bodily injury resulting in death and of second degree murder. A sentence of 25 years to life in prison was imposed for the conviction of assault on a child resulting in death. A sentence of 15 years to life in prison was imposed for the second-degree-murder conviction. Execution of sentence for the murder conviction was stayed pursuant to Penal Code section 654.[1] Defendant contends that because execution of sentence for the murder conviction was stayed pursuant to section 654, the prohibition against the earning of presentence conduct credit for persons convicted of murder that is established by section 2933.2, subdivision (c) (section 2933.2(c)), should not have been applied to the calculation of presentence conduct credit against defendant's term of imprisonment for assault on a child resulting in death. We disagree.

I

Defendant smothered his son James, then nearly one year of age. The child died of suffocation. Defendant was convicted by jury of second degree

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

murder (§§ 187, subd. (a), 189) and assault on a child with force likely to cause great bodily injury resulting in death. (§ 273ab.) As noted, the trial court imposed and executed sentence for the conviction carrying the greater term; specifically, the court sentenced defendant to a term in prison of 25 years to life for the crime of assault on a child resulting in death. The court imposed a sentence of 15 years to life in prison for the second-degree-murder conviction, but stayed execution of sentence for that offense pursuant to section 654. The court awarded credit for presentence custody in the amount of 567 days, but denied the presentence conduct credit that ordinarily may be earned by a person convicted of assault on a child resulting in death. The court reasoned that, because defendant had been convicted of second degree murder, he was ineligible for conduct credit pursuant to section 2933.2(c). Defendant appealed from the sentence on the ground stated above. The Court of Appeal affirmed the judgment of the trial court, and we granted defendant's petition for review.

## II

We begin with a review of pertinent provisions governing the award of credits against prison sentences. Persons who remain in custody prior to sentencing receive credit against their prison terms for all of those days spent in custody prior to sentencing, so long as the presentence custody is attributable to the conduct that led to the conviction. (§ 2900.5.) This form of credit ordinarily is referred to as credit for time served.

Additional credit may be earned, based upon the defendant's work and good conduct during presentence incarceration. (§§ 2900.5, subd. (a), 4019.) Such presentence credit is referred to as conduct credit. (See *People v. Cooper* (2002) 27 Cal.4th 38, 40 [115 Cal.Rptr.2d 219, 37 P.3d 403].) Conduct credit ordinarily is earned in the amount of two days for every four days the defendant is in actual presentence custody. (§ 4019; see *People v. Dieck* (2009) 46 Cal.4th 934, 941 [95 Cal.Rptr.3d 408, 209 P.3d 623].) The circumstance that a defendant is sentenced to an indeterminate sentence does not preclude the earning of presentence conduct credit. (*People v. Philpot* (2004) 122 Cal.App.4th 893, 908 [19 Cal.Rptr.3d 280]; see *People v. Buckhalter* (2001) 26 Cal.4th 20, 32–33 [108 Cal.Rptr.2d 625, 25 P.3d 1103]; *People v. Thomas* (1999) 21 Cal.4th 1122, 1125 [90 Cal.Rptr.2d 642, 988 P.2d 563].)

At the time of sentencing, credit for time served, including conduct credit, is calculated by the court. The "total number of days to be credited" is memorialized in the abstract of judgment (§ 2900.5, subd. (d)) and "shall be credited upon [the defendant's] term of imprisonment . . . ." (§ 2900.5, subd. (a).) The credit "in effect, becomes part of the sentence." (*In re Marquez* (2003) 30 Cal.4th 14, 21 [131 Cal.Rptr.2d 911, 65 P.3d 403].)

■ Finally, prisoners serving determinate terms (as well as those serving certain indeterminate terms) may earn so-called worktime credit for participation in prison work and training programs during their postsentence incarceration. (§ 2933; see *People v. Buckhalter, supra,* 26 Cal.4th at p. 31; *In re Cervera* (2001) 24 Cal.4th 1073, 1078–1079 [103 Cal.Rptr.2d 762, 16 P.3d 176].) Ordinarily, prisoners earn worktime credit at the rate of six months of credit for every six months of participation—essentially, one day of credit for each day of participation. (*In re Reeves* (2005) 35 Cal.4th 765, 768 [28 Cal.Rptr.3d 4, 110 P.3d 1218] (*Reeves*).)

■ The rules governing the award of credits are subject to certain restrictions, including those discussed in the present case and in today's decision in *In re Pope* (2010) 50 Cal.4th 777 [114 Cal.Rpt.3d 225, 237 P.3d 552] (*Pope*). As we discussed in *Pope,* pursuant to subdivision (a) of section 2933.1 (section 2933.1(a)), persons who have been convicted of certain qualifying violent felonies (see § 667.5) are subject to a restriction upon the postsentence worktime credit they may earn against their sentences. (*Pope, supra,* 50 Cal.4th 777.) In these circumstances, postsentence worktime credit may be accrued at a 15 percent rate. (§ 2933.1(a).) Subdivision (c) of section 2933.1 (section 2933.1(c)), imposes a similar restriction on the presentence conduct credit that may be earned by persons who are convicted of specified violent offenses. Presentence conduct credit is limited to 15 percent of the actual period of presentence confinement. (§ 2933.1(c).)

With substantially the same phrasing as is used in section 2933.1, a further restriction upon the earning of conduct and worktime credit appears in section 2933.2. Subdivision (a) of that statute (section 2933.2(a)) *prohibits* persons convicted of murder from earning postsentence worktime credit, and subdivision (c) of the statute prohibits such persons from earning conduct credit for periods of presentence incarceration.

Thus section 2933.2 provides in relevant part: "(a) Notwithstanding Section 2933.1 or any other law, any person who *is convicted of murder,* as defined in Section 187, shall not accrue any credit, as specified in Section 2933 or Section 2933.05. [¶] . . . [¶] (c) Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest *for any person specified in subdivision (a).*" (Italics added.)

Defendant contends that section 2933.2(c) cannot be applied to deny him presentence conduct credit against the term for his assault offense because, although he was convicted of murder and a sentence for that crime was imposed, execution of sentence for that offense was stayed pursuant to section

654. Relying principally upon *Reeves, supra,* 35 Cal.4th 765, he claims that because, by virtue of the stay of execution of sentence pursuant to section 654, he is not serving a sentence for murder, he does not qualify as a person named in subdivision (a) of section 2933.2—he is not a person who "*is convicted*" of the qualifying offense of murder.

■ Although our decision in *Pope, supra,* 50 Cal.4th 777 interpreted section 2933.1(a), which governs *postsentence* credit for persons convicted of qualifying violent felonies, the analysis we developed in *Pope* applies equally to the present case because of the parallel language of sections 2933.1 and 2933.2, and thus requires that we reject defendant's claim. It is critical to our analysis that section 2933.2(c), like section 2933.1(c), defines as its " 'target population' " (*Reeves, supra,* 35 Cal.4th at p. 775) "any person *specified in subdivision (a).*" (§ 2933.2(c), italics added.) In section 2933.2(a), just as in section 2933.1(a), the person specified is defined as "any person who *is convicted*" of the qualifying offense. (Italics added.) For the reasons stated in *Pope, supra,* 50 Cal.4th 777, the circumstance that execution of sentence for the murder conviction was stayed pursuant to section 654 does not alter the reality that defendant is a person who "is convicted" of the crime of murder within the meaning of section 2933.2(a), and that as a consequence he falls within section 2933.2(c)'s target population.

Defendant—like the petitioner in *Pope, supra,* 50 Cal.4th 777— nonetheless insists that the circumstance that execution of sentence for the qualifying offense was stayed pursuant to section 654 signifies that he cannot be subjected to "additional punishment" in the form of a loss of presentence conduct credit under section 2933.2(c). As we shall explain, we disagree.

Section 654 provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

■ Originally, some controversy existed regarding the appropriate procedure for sentencing courts to follow in carrying out the mandate of section 654. Courts were concerned that, if they *dismissed* the count carrying the lesser penalty, and the count carrying the greater term was reversed or vacated on direct appeal or through collateral review, the defendant could escape punishment entirely. (See *People v. Pearson* (1986) 42 Cal.3d 351, 360 [228 Cal.Rptr. 509, 721 P.2d 595]; *People v. Niles* (1964) 227 Cal.App.2d 749, 756 [39 Cal.Rptr. 11].) Staying *imposition* of sentence also was not a satisfactory solution. " 'Upon conviction it is the duty of the court to pass sentence on the defendant and impose the punishment prescribed. [Citations.]

Pursuant to this duty the court must either sentence the defendant or grant probation in a lawful manner; it has no other discretion.' " (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468 [103 Cal.Rptr.3d 898], quoting *People v. Cheffen* (1969) 2 Cal.App.3d 638, 641 [82 Cal.Rptr. 658].)

Imposition of concurrent sentences also was inappropriate, because such sentences were considered to still punish the defendant for both offenses. "It has long been established that the imposition of concurrent sentences is precluded by section 654 [citations] because [under such a sentence] the defendant is deemed to be *subjected* to the term of *both* sentences although they are served simultaneously." (*People v. Miller* (1977) 18 Cal.3d 873, 887 [135 Cal.Rptr. 654, 558 P.2d 552], italics added, disapproved on another ground in *People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 8 [12 Cal.Rptr.3d 325, 88 P.3d 56]; see *People v. Cruz* (1995) 38 Cal.App.4th 427, 434 [45 Cal.Rptr.2d 148]; see also *In re Wright* (1967) 65 Cal.2d 650, 652, 654–655 [56 Cal.Rptr. 110, 422 P.2d 998] [observing that many decisions have rejected the view that "concurrent sentences for crimes based on one act or indivisible transaction do not constitute multiple punishment . . ."]; *People v. Alford, supra,* 180 Cal.App.4th at p. 1468 ["Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment."].)

Accordingly, rather than dismissing charges or imposing concurrent sentences, when a court determines that a conviction falls within the meaning of section 654, it is necessary to *impose* sentence but to stay the *execution* of the duplicative sentence, a resolution we anticipated would prevent the addition of incremental punishment. (*People v. Pearson, supra,* 42 Cal.3d at p. 361; see *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1128 [77 Cal.Rptr.3d 569, 184 P.3d 702]; *In re Wright, supra,* 65 Cal.2d at pp. 652–655.) A stay of execution of sentence would, for example—unlike a concurrent sentence— prevent the Division of Juvenile Justice (DJJ, formerly the California Youth Authority) from relying upon the stayed sentence as a basis for determining that a juvenile offender is ineligible for DJJ commitment. (*People v. Pearson, supra,* 42 Cal.3d at p. 361.) The sentencing court should stay execution of sentence pending completion of service of sentence upon the greater offense, with the stay to become permanent upon completion of that sentence. (*People v. Niles, supra,* 227 Cal.App.2d at p. 756; see 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 147, pp. 211–212 [characterizing the *Niles* formulation as the "accepted approach"]; see also *People v. Gonzalez, supra,* 43 Cal.4th at p. 1128; *People v. Deloza* (1998) 18 Cal.4th 585, 594 [76 Cal.Rptr.2d 255, 957 P.2d 945]; *People v. Pearson, supra,* 42 Cal.3d at p. 360; *People v. Miller, supra,* 18 Cal.3d at p. 886 [the stay "is to be effective pending the successful service of sentence for the more serious conviction, at which time the stay is to become permanent"]; *People v. Alford, supra,* 180 Cal.App.4th at p. 1469.)

The trial court in the present case, adhering to the procedure developed in the cases cited above, imposed sentence upon defendant for the qualifying murder offense, but stayed execution of sentence for that offense in view of the longer sentence the court imposed and executed for the nonqualifying offense. The court granted defendant 567 days of credit for time served, but denied him conduct credit.

As noted, defendant claims that, in addition to requiring a stay of execution of sentence for the qualifying murder offense, section 654 also should protect him from the loss of presentence conduct credit, against the term on his assault offense, pursuant to section 2933.2(c). He calculates that the loss of credit caused by the trial court's application of the latter statute increased his punishment for the nonqualifying assault offense by 85 days, even though execution of sentence for the qualifying murder conviction had been stayed. This increase in punishment, he claims, violates the command of section 654.

We agree that application of section 2933.2(c) results in defendant's serving a greater proportion of the total prison term than would be the case if he had been convicted solely of the nonqualifying offense. This result, however—service of a greater proportion of the prison sentence by a person who "is convicted" of the qualifying murder offense—is exactly what was intended by section 2933.2(c), "[n]otwithstanding . . . any other provision of law."

■ As we have observed, subdivisions (a) and (c) of section 2933.2 employ language virtually identical to the language of the parallel subdivisions of section 2933.1, and are subject to the same interpretation. As to the latter language of section 2933.1, we commented in *Reeves, supra,* 35 Cal.4th 765, that the intent of the Legislature in enacting this provision was to "delay[] the release of prisoners convicted of violent offenses." (*Id.* at p. 771.) The Legislature itself explained that the statute was adopted to "protect the public from dangerous repeat offenders *who otherwise would be released. . . .*" (Stats. 1994, ch. 713, § 2, p. 3448, italics added.) Like section 2933.1, section 2933.2 was intended to ensure that a person who "is convicted" of the qualifying offense, namely murder, would not advance the time of his or her release by means of presentence conduct and postsentence worktime credits.

■ Moreover, in the words of section 2933.2(c), *"no credit . . . may be earned"* by any person convicted of murder. (Italics added.) The restrictions imposed by section 2933.2(c) could not operate effectively to ensure that the entire prison term of a defendant who "is convicted" of murder would be served in full, if service of the resulting longer, total term of imprisonment for such a person were prevented by the application of section 654. Although

that statute bars multiple punishment for the same "act or omission" that is made punishable under two different statutes, it is evident that, for any person who "is convicted" of murder, section 2933.2(c) overrides the protection of section 654. As we explained in *Pope, supra*, 50 Cal.4th 777, the Legislature intended that *all* persons who come within the purview of the credit-limiting statutes should suffer the loss of credit contemplated by the statutes, simply by virtue of the circumstance that they have been convicted of the qualifying offense.

Section 2933.2, like section 2933.1, repeatedly specifies that its restrictions upon the earning of presentence and postsentence credits apply notwithstanding any other law. (§§ 2933.2(a) ["[n]otwithstanding . . . any other law"], 2933.2(c) ["[n]otwithstanding . . . any other provision of law"]; see also §§ 2933.1(a) ["[n]otwithstanding any other law"], 2933.1(c) ["[n]otwithstanding . . . any other provision of law"].) We have made it plain, with respect to statutes employing the same "notwithstanding" language, that a statute may prevent or negate the operation of section 654 even in the absence of an express reference to that provision. (*People v. Palacios* (2007) 41 Cal.4th 720, 730 [62 Cal.Rptr.3d 145, 161 P.3d 519] [under § 12022.53, and in the absence of any specific reference to § 654, three firearm-use enhancements may be imposed in connection with offenses committed against a single victim with a single shot]; *People v. Benson* (1998) 18 Cal.4th 24, 32–33 [74 Cal.Rptr.2d 294, 954 P.2d 557] [under § 1170.12, subd. (b), and in the absence of any specific reference to § 654, prior felony conviction qualified as strike, despite the circumstance that the trial court in the prior proceeding stayed execution of sentence for one or more of the felonies, pursuant to § 654].)

Considering section 2933.2(c) in the context of surrounding statutory provisions, and also considering the purpose that sections 2933.1 and 2933.2 were intended to serve, we conclude the "notwithstanding" language found in section 2933.2(c) operates to prevent any reduction of the term of imprisonment for a person who "is convicted" of murder, despite the general provisions of section 654.

Support for our conclusion may be found in *People v. McNamee* (2002) 96 Cal.App.4th 66, 70 [116 Cal.Rptr.2d 625] (*McNamee*), although the court in that case did not consider, and had no occasion to comment upon the application of, section 2933.2(c) in the context of section 654. The defendant in *McNamee* was convicted of second degree murder, and a firearm-use enhancement was found true. An indeterminate sentence of 15 years to life in prison was imposed—and *executed*—for the murder conviction, and a consecutive determinate term of 10 years was imposed—and *executed*—for the firearm-use enhancement. The defendant conceded that section 2933.2(c) rendered him ineligible for presentence conduct credit against his indeterminate term for the murder conviction, but argued that the limitation created by

section 2933.2(c) should not extend to bar presentence conduct credit against the consecutive determinate term for the enhancement. The question presented was "whether [the statute's] ban on presentence conduct credits applies to a *determinate* term as well as an *indeterminate* one." (*McNamee, supra*, 96 Cal.App.4th at p. 69, italics added.)

The court concluded that section 2933.2(c) applied to a determinate-term enhancement as well as to the indeterminate term for murder. In a reading of the statute that accords with our own, the court reasoned that, for purposes of section 2933.2(c), "any person" specified in subdivision (a) of section 2933.2 simply was one who had been convicted of a qualifying felony. (*McNamee, supra*, 96 Cal.App.4th at p. 69.) The court also observed, with the same understanding of the statute that we have expressed above: "[T]he language of section 2933.2, subdivision (c) is broad and evidences an intention to impose a complete ban on presentence conduct credits for those defendants who come within its purview. Subdivision (c) states that, notwithstanding section 4019 'or any other provision of law,' no presentence conduct credits may be earned by a person convicted of murder. That language reflects an intent to supersede any and all provisions of law that might support an award of presentence conduct credits." (*McNamee, supra*, 96 Cal.App.4th at p. 70.)

■ We are unpersuaded by the argument that the "notwithstanding" language found in section 2933.2 (and § 2933.1) merely conveys the understanding that the provision applies notwithstanding the statutes that establish the generally applicable rules governing conduct and worktime credit. At various points in sections 2933.1 and 2933.2, the statutory language directs that the credit restrictions apply despite the very statutes that establish the ordinary rules governing credits. The more general "notwithstanding" language presumably is not surplusage, but applies to a broader category of "other" law. Thus, in subdivision (c) of sections 2933.1 and 2933.2, the limitation upon presentence credit applies "[n]otwithstanding *Section 4019*" (a statute generally governing presentence conduct credit)—or "any *other* provision of law." (Italics added.) Subdivision (a) of 2933.2 not only states that its restriction applies "[n]otwithstanding Section 2933.1 or any other law," but it also specifies that a person who is convicted of murder "shall not accrue any credit, *as specified in Section 2933*" (the general postsentence worktime credit statute) "or Section 2933.05" (providing for enhanced credits for successful completion of certain programs). (Italics added.) A parallel provision appears in section 2933.1(a), which provides that any person convicted of a qualifying felony "shall accrue no more than 15 percent of worktime credit, *as defined in Section 2933*." (Italics added; see also § 2933.5, subd. (a)(1) [providing that "[n]otwithstanding any other law," any person who is a recidivist convicted of specified offenses "shall be ineligible to earn credit . . . *pursuant to this article*." (Italics added)].)

■ We also are unpersuaded by defendant's reminder that courts ordinarily avoid concluding that the Legislature has repealed a statutory provision by implication. We have not suggested that section 654 has been repealed. Rather, we have concluded the Legislature intended that, for persons who have been convicted of murder, the limitation upon credit established by section 2933.2 should apply notwithstanding the still-valid general rule established by section 654. Moreover, many decisions of this court and the Courts of Appeal illustrate instances in which—by implication—the Legislature has overridden section 654 in certain circumstances. (See *People v. Palacios, supra*, 41 Cal.4th at p. 730, and cases cited; *People v. Benson, supra*, 18 Cal.4th at pp. 32–33, and cases cited.)

We agree with the Court of Appeal in the present case that the contrary decision in *In re Phelon* (2005) 132 Cal.App.4th 1214 [34 Cal.Rptr.3d 276] is unpersuasive. As we explained in *Pope, supra*, 50 Cal.4th 777, the court in *Phelon* erroneously concluded that, because the prisoner's qualifying offense had been stayed pursuant to section 654, section 2933.1(a) did not apply and the prisoner was entitled to earn unrestricted worktime credit against his sentence for a nonqualifying offense. As relevant to the present case, the court in *Phelon* went on to consider the availability of presentence conduct credit pursuant to section 2933.1(c). Although concluding that section 2933.1(c) applied, the appellate court further concluded that application of the subdivision was prohibited by the ban on multiple punishment contained in section 654. Because this statute ordinarily " 'prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed,' " the court concluded that section 654 would prohibit the loss of credit entailed in the application of section 2933.1(c) to that case. (*Phelon, supra*, 132 Cal.App.4th at p. 1220, quoting *People v. Pearson, supra*, 42 Cal.3d 351, 361.) The court in *Phelon* answered the question of whether the loss of credit constituted *punishment* within the meaning of section 654, but failed to consider whether section 2933.1 enacted an exception precluding application of section 654.

■ The Court of Appeal correctly concluded in the present case that it is evident the Legislature intended section 2933.2(c) to function as an *exception* to section 654. As we have explained, the purpose of the credit-restriction statute is to prevent conduct and worktime credit from advancing the release date of persons convicted of murder. We also agree with the Court of Appeal that section 2933.2(c) is "broad and clear" and, like subdivision (a) of the

statute, plainly "evinces an intent to preclude presentence conduct credits to anyone convicted of murder, even if that sentence is stayed pursuant to section 654."[2]

## III

For the foregoing reasons, the judgment rendered by the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

---

[2] To the extent it is inconsistent with our opinion in the present case, we disapprove the court's decision in *In re Phelon, supra*, 132 Cal.App.4th 1214.