Filed 3/9/21  P. v. Leae CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C087522 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF157042) |
| v. | |
| THOMAS PHILLIP LEAE, | |
| Defendant and Appellant. | |

Defendant Thomas Phillip Leae was found guilty of second degree murder, evading a peace officer causing death, and theft or unauthorized use of a car.  On appeal, defendant contends:  (1) the theft or unauthorized use of a car conviction must be reversed because it is possible the jury found him guilty on a theory of theft of a vehicle valued under $950, a legally invalid theory; and (2) punishment for evasion causing death must be stayed under Penal Code section 654 because it is derived from the same course of conduct as the second degree murder conviction.  We shall stay the sentence for evading a peace officer causing death.  In all other respects, the judgment is affirmed.

1

FACTS

A.K. reported her car stolen when she was living in Auburn, Washington. She testified she had paid a "[c]ouple thousand. Maybe $2,500 at the most" for the car. A.K. also testified she would see defendant around her apartment complex because his family lived there, but she did not see defendant after her car was stolen.

The following month, A.K.'s stolen car was used as a getaway car from the scene of a robbery-homicide. A woman walked into a precious metal store in Vancouver, Washington and shot the store's owner in the face, killing him. She then stole merchandise and cash and fled in the car. Surveillance videos showed the driver of the car as a man matching defendant's description. Other videos showed defendant had twice visited the precious metal shop earlier that month.

Five days later, California Highway Patrol officers began pursuing defendant, who was driving the stolen car, on southbound Interstate 5 near Willows, California after he failed to pull over for speeding. Though it was nighttime defendant had turned off the car's headlights and exceeded 110 miles-per-hour during the pursuit. About 15 minutes into the chase, defendant left the freeway and went through the freeway undercrossing. The lead police car briefly stopped defendant by hitting the car and spinning it.

Defendant was able to escape and continued driving but this time, defendant went southbound in the northbound lane. The car still had its lights off and was going between 60 and 80 miles per hour, almost hitting several cars heading in the opposite direction. Defendant attempted to leave the freeway again but lost control and crashed into a tree. Defendant's passenger, later identified as the woman who committed the robbery-murder, died in the car from the impact of the crash. Defendant was in the driver's seat and was held by police until an ambulance arrived. Items from the precious metal store in Vancouver, Washington were found in the vehicle.

Defendant was charged with murder (Pen. Code, § 187, subd. (a) – count 1),[1] evading a peace officer causing injury or death (Veh. Code, § 2800.3 – count 2), theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a) – count 3), and receiving stolen property, a motor vehicle (§ 496, subd. (a) – count 4).  The prosecutor later dismissed the receiving stolen property charge.

The jury instructions for second degree murder required the jury to find "defendant committed an act that caused the death of another person" with "malice aforethought."  For evading a peace officer, the jury had to find defendant was "driving a vehicle" and his "attempt to flee from, or elude, the pursuing peace officer caused the death of someone else."  For the "causing injury or death" element of evasion, the prosecutor explained to the jury:  "But for him trying to get away from the cops, [the accomplice] would be alive, at least at that point. . . . So that is an element and her death has been proved, as tragic as it is.  That is an element."  And for unlawful taking or driving a vehicle, the jury had to find "defendant took or drove someone else's vehicle" and "he intended to deprive the owner of possession . . . for any period of time."  For the "took or drove" element, the prosecutor explained to the jury, "The thing I find interesting about it is that all 12 of you don't have to agree on whether he took it or drove it.  You just have to all agree that he either took or either drove, the easiest one for all 12 of you to do.  He was clearly driving, so if all 12 of you agree that he was driving a stolen vehicle, you don't even have to dispute or determine if he took the stolen vehicle."

The jury found defendant guilty on all three counts.  The court sentenced defendant to consecutive terms of 10 years for evading a peace officer causing death and 8 months for unauthorized taking or driving a vehicle for a total determinate term of

---

[1] Undesignated statutory references are to the Penal Code.

10 years 8 months.  The court also sentenced defendant to a mandatory indeterminate term of 15 years to life for second degree murder, also to be served consecutively.

The court, on its own motion, recalled defendant's sentence to reconsider whether the terms for second degree murder and evading a peace officer causing death should run concurrently.  But the court decided to affirm the original sentence.

DISCUSSION

I

*Theft or Unauthorized Use of a Car Conviction*

Defendant asserts he could be charged with a felony under Vehicle Code section 10851, subdivision (a) only if the jury found him guilty of taking a car worth more than $950 or of posttheft driving.  He argues there was no substantial evidence the fair market value of the vehicle was over $950 and the evidence and arguments at trial could have led the jury to convict defendant of either taking or driving, so it is not beyond a reasonable doubt the jury unanimously found him guilty of a felony.  We disagree.

"When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground."  (*People v. Chiu* (2014) 59 Cal.4th 155, 167.)  "[T]he presumption is that the error affected the judgment" because, when " ' "jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." ' "  (*In re Martinez* (2017) 3 Cal.5th 1216, 1224.)  The presumption is rebutted if "we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory."  (*Chiu*, at p. 167.)

Vehicle Code section 10851 is violated when a person "drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle."  (Veh. Code, § 10851, subd. (a).)  A vehicle taking is a misdemeanor if

4

the value of the vehicle does not exceed $950. (*People v. Page* (2017) 3 Cal.5th 1175, 1187.) But "[w]here the evidence shows a 'substantial break' between the taking and the driving, posttheft driving may give rise to a conviction under Vehicle Code section 10851 distinct from any liability for vehicle theft." (*Id.* at p. 1188.) Thus, for a felony conviction under Vehicle Code section 10851, the prosecutor must prove either (1) posttheft driving, or (2) taking a vehicle of greater than $950 in value. (*People v. Bullard* (2020) 9 Cal.5th 94, 110.)

We agree with defendant that it is not beyond a reasonable doubt the jury found the car at issue was worth more than $950. Though there was testimony the owner had paid a "[c]ouple thousand," the jury instructions did not require a finding of the car's value and the prosecutor also did not argue the car's value. The People do not contend otherwise.

To uphold the verdict, it must then be established beyond a reasonable doubt the jury's verdict was based on defendant's posttheft driving as opposed to taking the car. We conclude this is so because of the conviction for evading a peace officer causing death. For the jury to find defendant guilty on this count, the jurors must have unanimously found defendant was "driving a vehicle." Even if the jury instructions, prosecutor's arguments, and the evidence at trial could have permitted the jury to find defendant stole the car, a legally invalid theory without also finding the car's value exceeded $950, the jury necessarily found he drove the car when they found him guilty of evasion causing death, a legally valid theory. This posttheft driving was distinct from any original theft because there was a substantial break between the theft and the driving, covering several days through several states. (See *People v. Calistro* (2017) 12 Cal.App.5th 387, 404-405 ["If defendant did take the car, his subsequent driving of the car—driving it around for hours and then finally driving it to the 7-Eleven for gas— was not part of the original taking."].) It is therefore beyond a reasonable doubt the jury found defendant guilty of Vehicle Code section 10851 on a legally valid theory.

## II

### *Section 654*

Defendant next argues the second degree murder and evasion resulting in death convictions derived from the same course of conduct – evading a peace officer while driving, resulting in a death – with the same indivisible objective – escaping from police. The People argue defendant had separate objectives for the two crimes because he "did more than try to evade police, he separately decided to endanger the lives of others in doing so." We conclude imposing punishment for both counts violated section 654.

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Courts impose and stay execution of the lesser punishment deriving from the same act or omission. (*People v. Duff* (2010) 50 Cal.4th 787, 796.)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

We review a trial court's factual finding of whether there was a single criminal act or a course of conduct with a shared intent or objective under the substantial evidence standard, which will not be reversed unless unsupported by the evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) "When those facts are undisputed—as they are

6

here—the application of section 654 raises a question of law we review de novo." (*People v. Corpening*, *supra*, 2 Cal.5th at p. 312.)

The second degree murder and the evasion causing death convictions are derived from a single act – driving in a manner that caused the passenger's death. As stated in the jury instructions, confirmed by the prosecutor's arguments, fleeing required finding the "attempt to flee from, or elude, the pursuing peace officer *caused the death of someone else*" and for second degree murder the "defendant committed an act that *caused the death of another person*." (Italics added.) The passenger's death was the only death at issue in this case and was an element of both crimes. Though defendant's attempts to elude officers became increasingly reckless prior to the car crash, he was not found guilty of simple attempting to elude (Veh. Code, § 2800.2, subd. (a)) but with attempting to elude proximately causing death (Veh. Code, § 2800.3, subd. (b)). It was the single act of driving in a manner that proximately caused death that was the basis for both convictions. Subjecting defendant to punishment for both charges violates section 654.

We reached this same conclusion when examining a related issue in *People v. Sewell* (2000) 80 Cal.App.4th 690, disapproved on other grounds by *People v. Howard* (2005) 34 Cal.4th 1129, 1138. On facts similar to the present case, we concluded evasion causing death was not a lesser included offense of second degree murder so the two convictions could "stand together." (*Sewell,* at p. 697.) But we also noted, "The trial court properly stayed sentence under Penal Code section 654 on the conviction for evading a peace officer causing serious bodily injury or death." (*Ibid.*; see also *People v. Young* (1992) 11 Cal.App.4th 1299 [trial court stayed punishment for evading an officer causing death where defendant was convicted of first degree murder for that death].)

Defendant's convictions are also substantially similar to the convictions in *People v. Sanchez* (2001) 24 Cal.4th 983. There, the defendant had killed someone while driving drunk and was convicted of second degree murder and gross vehicular manslaughter while intoxicated for the death of the same victim. (*Id*. at pp. 985-986.) The California

7

Supreme Court found "the trial court properly avoided dual punishment pursuant to section 654 by staying execution of sentence for the vehicular manslaughter offense" because "a defendant generally has a right under section 654 not to be punished twice for the same act. Thus, if a defendant is convicted of both offenses based upon the commission of a single act, a trial court generally would be obligated to stay execution of sentence on one of the convictions." (*Id.* at pp. 988, 992; see also *People v. Jones* (2012) 54 Cal.4th 350, 360 [multiple punishments for possessing one firearm violated § 654]; *People v. Mesa* (2012) 54 Cal.4th 191, 200 [multiple punishments for both assault with a firearm and active participation in a gang violated § 654 because the assault established active gang participation].)

The People's argument that defendant had separate objectives when committing the two crimes, and their corresponding legal support, are inapplicable. (See *People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268 [defendant may be punished for each violation if "defendant had multiple or simultaneous objectives"]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 ["at some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' "].) We do not examine the intent or objectives of the crimes here because both charges punish the same physical act. (*People v. Louie* (2012) 203 Cal.App.4th 388, 397 ["multiple objectives do not turn a single act into more than one criminal act. A single criminal act, even if committed incident to multiple objectives, may be punished only once"].) Thus, section 654 applies to stay the sentence for evading a peace officer causing death.

DISPOSITION

The punishment for evasion of a peace officer causing death is stayed.  In all other respects, the judgment is affirmed.  The trial court is directed to amend the abstract of judgment accordingly.  The court is further directed to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitations.


<u>  /s/                       </u>
HOCH, J.


We concur:


<u>  /s/                       </u>
RAYE, P. J.


<u>  /s/                       </u>
BLEASE, J.