Filed 12/3/25  P. v. Dunlap CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JONATHAN BREON DUNLAP,<br><br>    Defendant and Appellant. | G063191<br><br>(Super. Ct. No. 17WF2771)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge. Affirmed

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

Jonathan Breon Dunlap challenges his convictions and sentence for voluntary manslaughter and shooting at an inhabited dwelling house. He contends (1) the evidence did not support his conviction for shooting at an inhabited dwelling house, (2) the trial court erred by instructing the jury on the victim's right to eject trespassers, and (3) the court erred by imposing a concurrent sentence for voluntary manslaughter before staying its execution. Finding no error, we affirm.

FACTS

The Orange County District Attorney charged Dunlap with the murder of John Nondorf, Jr. (Pen. Code, § 187, subd. (a); count 1)[1] and shooting at an inhabited dwelling house (§ 246; count 2). The information included firearms enhancement allegations.

According to the evidence at trial, Dunlap and a group of friends gathered at a motel, where Nondorf and his fiancée were staying. At some point, Nondorf saw Dunlap near Nondorf's car, near his room, and a heated exchange followed. Nondorf retrieved a baseball bat from his room. In response, a member of Dunlap's group handed Dunlap a gun.

Seeing the gun, Nondorf retreated to his doorway and continued arguing while his fiancée tried to call the police. Dunlap's group pressed forward and confronted Nondorf at the threshold. One member briefly entered the room before Dunlap pulled her out; another tried to wrestle away Nondorf's bat, while someone reached inside to punch him.

Dunlap then raised the gun and fired four times. Two bullets struck Nondorf, killing him: one bullet exited the back of his head and another lodged in his lower back. Two bullets struck inside the room—one

_____

[1] Statutory references are to this code.

passing through a wall before lodging in a back wall and another hitting the floor. At trial, the jury saw surveillance video of the incident.

Dunlap claimed self-defense and the trial court instructed the jury on that theory. At the prosecution's request, and over Dunlap's objection, the court also instructed the jury on the right to eject a trespasser from real property (CALCRIM No. 3475).[2]

The jury convicted Dunlap of the lesser included offense of voluntary manslaughter (count 1) and shooting at an inhabited dwelling house (count 2). It found true the firearm enhancements. The trial court sentenced Dunlap to 28 years to life on count 2. On count 1, the court imposed a concurrent sentence of 16 years in prison but stayed execution under section 654, concluding both counts arose from a single act.

DISCUSSION

I.

SUBSTANTIAL EVIDENCE SUPPORTS THE CONVICTION ON COUNT 2

Dunlap contends the evidence does not support his conviction for shooting at an inhabited dwelling house because he fired at Nondorf rather than at the motel room. We review a sufficiency challenge for substantial evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) A conviction for shooting at an inhabited dwelling house requires proof that the defendant fired with at least conscious disregard for the probability that a bullet would strike the dwelling. (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1356.)

_____

[2] The instruction stated: "The lawful occupant of a home/property may request that a trespasser leave the home/property. If the trespasser does not leave within a reasonable time and it would appear to a reasonable person that the trespasser poses a threat to the home/property or the occupants, the lawful occupant may use reasonable force to make the trespasser leave."

The evidence amply supports the jury's finding that Dunlap at least recklessly shot at the motel room. Dunlap fired multiple shots at Nondorf from point-blank range while Nondorf stood at the doorway of his motel room. Under these facts, it was almost certain that any bullet missing Nondorf, or passing through his body, would strike the room. It's therefore unsurprising that two of the four shots did strike the room—one striking the floor and the other passing through a wall before lodging in another. The jury could reasonably infer that Dunlap acted with conscious disregard for the probability of striking the room. (See *People v. Chavira* (1970) 3 Cal.App.3d 988, 993 [sufficient evidence of conscious disregard where defendant's group fired barrage of shots at persons near dwelling].)

II.

THE TRIAL COURT CORRECTLY INSTRUCTED

ON THE RIGHT TO EJECT A TRESPASSER

The trial court properly instructed the jury on Nondorf's right to eject a trespasser at the prosecution's request. "We review jury instructions de novo. [Citation.] 'A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence.'" (*Ghezavat v. Harris* (2019) 40 Cal.App.5th 555, 558.)

Although CALCRIM No. 3475 generally applies to cases in which an occupant is charged with using excessive force to eject a trespasser, its principles may also apply when assessing a trespasser's right to self-defense. (*People v. Johnson* (2009) 180 Cal.App.4th 702, 709–710.) If an occupant lawfully uses force to defend against a trespasser, the trespasser has no right to self-defense against that use of force. (*Id.* at p. 710.)

4

The evidence supported giving this instruction. Dunlap's belligerent group confronted Nondorf at the entrance to his room. One group member entered the room and another reached inside to punch Nondorf. Dunlap does not dispute that his group members could be deemed trespassers.

Although an initial aggressor generally cannot claim self-defense, the aggressor may regain that right by communicating withdrawal through words or conduct. (*People v. Hernandez* (2003) 111 Cal.App.4th 582, 588.) The jury could reasonably have found that Nondorf had done just that by backing away and returning to his room after seeing Dunlap's gun. Dunlap claims this was insufficient because Nondorf remained nearby, left the door open, still held the bat, and continued arguing.[3] But the jury could reasonably have concluded that Nondorf's behavior indicated withdrawal: from that distance, he and his bat posed no threat and his continued yelling was arguably an attempt to save face. The trial court properly gave the instruction.

III.

THE TRIAL COURT PERMISSIBLY IMPOSED A

CONCURRENT SENTENCE ON COUNT 1 BEFORE STAYING ITS EXECUTION

The court fully implemented section 654, which generally prohibits imposing multiple punishments for a single act or omission. When a defendant is convicted of multiple offenses based on a single act, "the trial court must impose sentence on all counts, but stay execution of sentence as necessary to prevent multiple punishment." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 (*Alford*).) That's exactly what the court did here: it

---

[3] Dunlap estimates the distance from the initial confrontation to the doorway at about 20 feet, which appears consistent with the video of the incident.

imposed a lengthy total sentence on count 2 and then imposed a concurrent sentence on count 1 but ordered its execution stayed under section 654.

Dunlap misreads a treatise's statement that if section 654 applies, "it is improper for the court . . . to run the count concurrently." (Couzens et al., Cal. Practice Guide: Sentencing Cal. Crimes (The Rutter Group 2025) § 13.10, citing *People v. Duff* (2010) 50 Cal.4th 787, 795–796 & *Alford, supra*, 180 Cal.App.4th at p. 1468.) The point of this language is simply that an *unstayed* concurrent sentence is insufficient to implement section 654 because it still punishes the defendant for both offenses. (*People v. Duff*, at p. 796; *Alford*, at p. 1468.) Because the trial court did stay the execution of the sentence on count 1, Dunlap was not subjected to multiple punishments. (*Alford*, at p. 1469.) Labeling the stayed term as "concurrent" had no practical effect and caused him no prejudice.

DISPOSITION

The judgment is affirmed.


SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


GOODING, J.

6