Filed 1/20/26  P. v. Ochoa CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084250 |
| Plaintiff and Respondent, | (Super. Ct. Nos. SWF2007552, SWF2101291, SWF2301539) |
| v. | |
| MIGUEL ANGEL OCHOA, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed December 23, 2025 be modified as follows:

1.  On page 8, the first sentence of the last paragraph is modified to read:

> More importantly, the two women provided other testimony that, taken together, the jury could use to infer that Dean *was* wearing the necklace.

2.  The third sentence of the last paragraph on page 8 that begins "Reanna's testimony was more" is modified as two sentences to read:

> Reanna's testimony was confused in places and not entirely consistent.  But she told the jury she was sure Dean *was* wearing his necklace even though she did not see it on him.

3. At the end of the first sentence noted on item 2 above ending "not entirely consistent," add new footnote 9 with the following language, which will require renumbering of all subsequent footnotes:

> 9   To the extent there were inconsistencies in the testimony of any witness, they were the responsibility of the jury to resolve, and we must view the record in the light most favorable to the judgment.

There is no change in judgment.

The petition for rehearing is denied.

DATO, Acting P. J.

Copies to:  All parties

Filed 12/23/25  P. v. Ochoa CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084250 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SWF2007552, SWF2101291, SWF2301539) |
| MIGUEL ANGEL OCHOA, | |
| Defendant and Appellant. | |

APPEAL from judgments of the Superior Court of Riverside County, Timothy F. Freer, Judge.  Affirmed in part and remanded with directions.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Miguel Angel Ochoa of robbery and first degree murder-robbery in connection with the shooting death of the victim, Dean M.,[1] and theft of his gold necklace. The People's key witness was Carlos Alvarez, an accomplice to the crimes and their only eyewitness. He testified that Ochoa planned to steal Dean's necklace before shooting him and yanking it from his body.

Under Penal Code[2] section 1111, jurors could credit this testimony only if there was other evidence connecting Ochoa to these crimes. Although he accepts that this connection existed for the murder, Ochoa claims it was missing for the robbery because two witnesses testified that they did not see Dean wearing the necklace on the day of the murder. But both witnesses also testified to facts from which the jury could infer that Dean *was* wearing the necklace. This testimony, along with evidence supporting inferences of motive and that a theft occurred, satisfied section 1111.

At the same time the court sentenced Ochoa in the robbery-murder case, it also sentenced him for other offenses committed while in pretrial custody. The parties identify several sentencing issues and jointly request that we remand this case so the trial court may address them. We agree that errors were committed and concur with this recommendation. Accordingly, the case is remanded for the limited purpose of correcting the sentencing errors and recalculating custody credits. In all other respects, the judgments are affirmed.

---

[1] We refer to the victim by his first name for clarity and to safeguard family privacy interests, intending no disrespect.

[2] Subsequent undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Around sunrise on September 12, 2020, deputies found Dean's body on the side of a road. He had been shot at close range multiple times. His sweatshirt, with several holes on the right side, was found near the body. A gold necklace adorned with fake diamonds that Dean nearly always wore was missing.

Alvarez and Ochoa, the two persons with whom Dean was last seen alive, were apprehended shortly thereafter. Both were charged with first degree murder (§ 187, subd. (a)) accompanied by an attendant robbery special circumstance allegation (§ 190.2, subd. (a)(17)(A)).[3] In exchange for a stipulated sentence of 16 years, Alvarez pleaded guilty to one count each of voluntary manslaughter (§ 192, subd. (a)) and robbery (§ 211). He was also required to testify at Ochoa's trial.

According to Alvarez's testimony, on the evening of September 11, 2020, he drove alone to a Temecula motel where he picked up Ochoa and Dean.[4] Ochoa sat in the front passenger seat; Dean sat in the rear seat directly behind him. Dean was wearing dark-colored clothing when he got into the car. Although it was unclear when Alvarez first saw it, he was "pretty sure" Dean was wearing a chain necklace.

---

[3]    For both Ochoa and Alvarez, we mention only the relevant charges, allegations, convictions, and true findings.

[4]    Our description of the crime in this section of the opinion is based largely on testimony from Alvarez. We later discuss additional evidence from other sources in conjunction with analyzing Ochoa's contention based on section 1111 that the prosecution failed to sufficiently corroborate Alvarez's testimony.

At the beginning of the trip, Ochoa gave both Alvarez and Dean a Xanax pill.[5]  About 45 minutes later, and after Dean had fallen asleep, Ochoa told Alvarez that he planned to take the necklace as payback for Dean having stolen from him during a trip to Las Vegas a few days earlier.  Ochoa thought the necklace was worth $60,000.  He also said Dean was "cookies" and "done for," which Alvarez understood to mean that Ochoa was going to "waste him."

After driving for about an hour, Ochoa told Alvarez to pull to the side of the road.  Ochoa grabbed Alvarez's gun that was stashed in the car, got out, opened the rear passengerside door, and shot Dean multiple times.  He then took the necklace, pulled Dean's body from the car, and left the scene with Alvarez.

In November 2023, a jury convicted Ochoa of first degree murder with the robbery special circumstance and a separate count of robbery.  It also made a true finding that he personally used a gun during both crimes. (§ 12022.53, subd. (d).)  Ochoa was sentenced to the following:  an indeterminate term of life without the possibility of parole for his special circumstances murder conviction; a consecutive term of 25 years to life for the attendant gun use enhancement; a midterm of three years for his robbery conviction, doubled to six years based on a strike prior and stayed (§ 654); and a determinate sentence of five years for his serious felony prior (§ 667, subd. (a)).

---

[5]　The active ingredient in Xanax was detected in Dean's blood drawn postmortem.  He reportedly became "sleepy and drowsy" when taking it, which was consistent with a toxicologist's testimony about the effects of the drug.

DISCUSSION

## A. *Section 1111 and Accomplice Corroboration*

### 1. *Additional Background*

A few days before he was killed, Dean visited Las Vegas with his girlfriend Kalyssa P., along with Ochoa and his girlfriend (and Kalyssa's mother) Reanna M. During this trip, Dean wore diamond earrings and a gold necklace that appeared to be encrusted with diamonds. Ochoa admired Dean's jewelry, remarking that the earrings were "nice."

Dean was proud of the necklace and would often brag about how much it cost. Kalyssa thought it was adorned with diamonds, but she was not sure they were real. Reanna, by contrast, was sure they were not. According to Kalyssa, Dean wore the necklace and earrings every day. How he wore the necklace depended on the type of shirt he had on—he would wear it over a t–shirt but would usually tuck it underneath a sweatshirt or a sweater.

On September 11, 2020, the day of the murder, the group drove from Las Vegas to a motel in Temecula. Dean's conduct twice provoked Ochoa's ire after the parties checked into the motel. First, Dean crashed Reanna's car into a sign. Later, he threw a glass bong against a wall during an argument with Kalyssa that upset everyone. After this second incident, Ochoa told Dean that he had "to pay."

Before being picked up by Alvarez, Ochoa and Dean told their girlfriends they were leaving the motel to handle some "personal business" involving someone else. As suggested by Ochoa and to avoid being captured on a security camera, Dean changed into dark colored pants and a dark colored sweatshirt, removing anything visible that was shiny. He gave Kalyssa his earrings for safekeeping, but did not give her the necklace.

5

Kalyssa did not recall seeing the necklace while the group was in Temecula, but she also did not remember what kind of shirt Dean wore on September 11. She thought he might have put the necklace with his things in the hotel room before leaving with Ochoa and Alvarez. Reanna did not recall seeing the necklace in Temecula, but she said she was sure Dean wore it.[6]

After the shooting, Alvarez drove to a car wash where Ochoa tried to clean Dean's blood out of the back seat of the car. A couple of hours later, Ochoa told Reanna in a text message that he had "something that we can sell and we could make some good coin. Trust." He and Alvarez returned to the motel a short time later.

A few days after the murder, and before she learned that Dean had been killed, Kalyssa gave his earrings to Reanna who in turn gave them to Ochoa. None of Dean's jewelry was recovered during the investigation, nor did investigators find evidence of a transfer of cash to Ochoa that could have been associated with a sale of jewelry.

2.    *Corroboration of Alvarez's Testimony*

The jury was instructed that it could not rely on Alvarez's testimony to convict Ochoa of robbery and murder unless it was corroborated by credible

---

[6]    Reanna's testimony on this point is not entirely clear due to the interjection of objections by counsel and comments from the trial court. To the extent it is ambiguous, we interpret the evidence in the light most favorable to the judgment. (See, e.g., *People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 4.)

evidence "tending to connect the defendant to the commission of the crimes."[7] (See CALCRIM No. 335; § 1111.) Ochoa's main argument on appeal is that corroboration for the robbery was lacking because the only evidence that Dean was wearing the necklace at the time of his murder came from Alvarez. Thus, he maintains, his robbery conviction and the robbery special circumstance finding must be reversed.[8] The People counter that there was ample independent evidence from which the jury could infer that Dean was wearing the necklace and that Ochoa took it after shooting him.

"A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (§ 1111.) Corroborative evidence does not have to "independently prove guilt" (*People v. Hall* (2024) 104 Cal.App.5th 1077, 1092 (*Hall*)) or "corroborate every fact to which the accomplice testifies" (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32) to satisfy section 1111. (See *Romero and Self*, at p. 32 [evidence may be "circumstantial or slight, entitled to little consideration when standing alone"].) Rather, it needs only to "support the accomplice testimony and permit a reasonable inference that the accomplice's testimony is true." (*Hall*, at p. 1092.)

---

[7] The court also instructed the jury that Alvarez was an accomplice, a conclusion neither party disputes and with which we find no issue. § 1111 [an accomplice is "one who is liable for prosecution for the identical offense charged against defendant on trial in the cause in which the testimony of the accomplice is given"].)

[8] We treat the robbery conviction and special circumstance the same when applying section 1111. (*People v. Jasso* (2025) 17 Cal.5th 646, 684; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1129.)

The jury must decide the issue of corroboration and may consider "the entire conduct of the parties, their relationship, and their acts during and after the crime." (*People v. Narvaez* (2002) 104 Cal.App.4th 1295, 1305.) This determination binds us unless independent evidence does not "reasonably tend to connect the defendant with the commission of the crime." (*People v. McDermott* (2002) 28 Cal.4th 946, 986 [stating rule when no evidentiary objections are at issue].) We determine the existence or not of this connection by reviewing the entire record and construing the evidence in favor of the judgment. (*Hall, supra,* 104 Cal.App.5th at p. 1092.)

The linchpin of Ochoa's claim that corroboration of the robbery was lacking is his interpretation of Reanna's and Kalyssa's testimony as conclusively showing Dean was not wearing the necklace when he was killed. Ochoa's argument, however, takes certain liberties in characterizing the testimony. It is true both women stated they did not *see* Dean wearing the necklace in Temecula before he was killed. But especially given Kalyssa's testimony that Dean gave her the earrings but *not* the necklace before leaving with Ochoa and Alvarez, the cited evidence does not conclusively establish that Dean was not wearing the necklace when he was killed.

More importantly, the two women provided other testimony the jury could use to infer that Dean *was* wearing the necklace. Kalyssa said Dean wore the necklace every day but—consistent with her testimony that she did not see him wearing it that night—would tuck it underneath a sweatshirt like the one he changed into before leaving with Ochoa and Alvarez. (See *People v. Valencia* (2008) 43 Cal.4th 268, 291 [robbery victim's habit may be probative that property was taken].) Reanna's testimony was more to the point: She told the jury she was sure Dean *was* wearing his necklace even though she did not see it on him. She was also certain the diamonds in the

8

necklace were fake, whereas Kalyssa was not sure. The jury could reasonably deduce that the only way Reanna could know these facts was because Ochoa (her boyfriend) took the necklace.

Other evidence also connected Ochoa to the robbery. Motive could be inferred from his statement on the day of the murder that Dean "had to pay," and his belief that the necklace was valuable. (See *People v. Szeto* (1981) 29 Cal.3d 20, 28 [evidence of motive may be corroboratory].) The text message Ochoa sent to Reanna about having something to sell for "good coin" after shooting Dean suggested he had just obtained something of considerable value. So too did the fact that the necklace was never found. The presence of Xanax in Dean's system confirmed Alvarez's testimony that Ochoa gave him this drug, which the jury could deduce was a step he took to soften Dean up. Finally, the fact that Dean's sweatshirt was removed after the shooting, arguably providing access to the necklace, further tends to corroborate Alvarez's testimony. While the independent evidence may not have been sufficient by itself to prove that Ochoa took Dean's necklace, it corroborated multiple details of Alvarez's testimony. Nothing more is required to uphold the robbery verdict or the true finding on the robbery special circumstance.

## B. *Sentencing Errors*

At the same time, it sentenced Ochoa in the robbery-murder case, the trial court also sentenced him for several offenses he committed while in pretrial custody and as to which he had earlier pleaded guilty. The parties raise issues regarding the sentences imposed in the robbery-murder case and for two of his in-custody offenses: (1) felony possession of a sharp instrument while in custody (§ 4502, subd. (a)), for which he received a two year concurrent sentence and 868 days of custody credit and (2) conspiracy to distribute controlled substances in prison (§§ 182, subd. (a)(1) & 4573), for

9

which he received a two year consecutive sentence and 72 days of custody credit. They also jointly request a remand to allow the trial court to address these matters in the first instance.

Starting with the robbery-murder case, Ochoa complains that the court did not award him any presentence custody credits even though the probation report stated he was entitled to 1,173 days. Section 2900.5 entitles a defendant to credit for actual time spent in custody before the commencement of a prison sentence, even when the sentence is indeterminate. (See *People v. Duff* (2010) 50 Cal.4th 787, 793; *People v. Herrera* (2001) 88 Cal.App.4th 1353, 1365.) The People agree that Ochoa is entitled to custody credit on this basis. But they also identify three more sentencing issues.

First, they assert that Ochoa received a concurrent sentence for the sharp instrument conviction even though the statute mandates a sentence consecutive to the one imposed for his robbery-murder conviction. (§ 4502, subd. (a).) Second, correcting his sharp instrument conviction to reflect a consecutive sentence also requires a custody credit adjustment (case No. SWF2101291)—because the People agree that Ochoa is entitled to custody credit for his robbery-murder conviction, he is not entitled to any credit for the sharp instrument conviction. (§ 2900.5, subd. (b) ["Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed"].) Third, Ochoa was credited with 72 days of custody on his conspiracy to distribute conviction (case No. SWF2301539), which resulted in a sentence consecutive to the one imposed for his robbery-murder conviction. The People contend that if he receives custody credit for the latter, section 2900.5, subdivision (b) precludes him from also receiving credit for the former.

10

We agree with the parties that the trial court erred in imposing a concurrent sentence for Ochoa's conviction for possessing a sharp instrument and in calculating his custody credits. A remand is appropriate so the court may address these issues in the first instance.

## DISPOSITION

The matter is remanded to the superior court with directions to conduct further proceedings consistent with this opinion, to replace the concurrent sentence with a consecutive sentence for Ochoa's conviction for possessing a sharp instrument while in custody in case No. SWF2101291. The court is also directed to recalculate the amount of custody credit he should receive for case Nos. SWF2101291, SWF2007552 and SWF2301539. The clerk shall prepare corrected abstracts of judgment and forward certified copies to the Department of Corrections. In all other respects, the judgments are affirmed.

DATO, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.

11