Filed 4/27/21  P. v. Riley CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>KWARMAINE RILEY,<br><br>        Defendant and Appellant. | F077822<br><br>(Super. Ct. No. F14907236)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Lindsay Sweet and Matthew J. Watts, under appointments by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Smith, Acting P.J., Meehan, J. and Snauffer, J.

## INTRODUCTION

In 2014, appellant Kwarmaine Riley entered a plea of no contest to one count of first degree residential burglary (Pen. Code,[1] §§ 459/460, subd. (a)). The trial court suspended imposition of sentence, placed him on formal probation for a period of three years, and imposed various fines and fees. Following multiple probation violations, criminal proceedings were suspended from April 2017 to May 2018, while he received restoration of competency treatment. When Riley was restored to competency, the court sentenced him to four years in state prison.

Riley raises the following issues on appeal: (1) he is entitled to have his case conditionally reversed and remanded so the trial court may hold a hearing pursuant to section 1001.36 to determine whether to grant him mental health diversion; (2) he is entitled to a hearing on his ability to pay fines and fees imposed by the court; and (3) he is entitled to additional presentence conduct credits.

We conditionally reverse the judgment with directions for the trial court to hold a hearing pursuant to section 1001.36 to determine whether to grant mental health diversion under the statute. (*People v. Frahs* (2020) 9 Cal.5th 618, 640 (*Frahs*).) If the trial court determines Riley is ineligible for diversion, or if Riley is granted diversion but fails to complete his treatment program, the court shall reinstate the judgment. In light of our conclusion, Riley's contention that he is entitled to an ability to pay hearing on the court-imposed fines and fees is moot. Finally, we reject Riley's contention that he is entitled to additional presentence conduct credits.

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

## PROCEDURAL HISTORY[2]

In August 2014, the Fresno County District Attorney's Office filed a criminal complaint charging Riley with one count of first degree residential burglary (§§ 459/460, subd. (a)).

In November 2014, Riley entered a plea of no contest to the charged offense.

In February 2015, Riley was placed on probation for three years. The trial court imposed a restitution fine of $300 under section 1202.4, and a stayed matching probation revocation fine under section 1202.44. The court also ordered a $40 court operations assessment under section 1465.8, and a $30 court facilities assessment under Government Code section 70373.

In September 2016, Riley violated the terms of his probation. His probation was reinstated.

In January 2017, based on new alleged violations, Riley's probation was revoked and a doctor was appointed to conduct a psychological/psychiatric examination of Riley.

In March 2017, the probation department filed another report alleging new probation violations, including a violation of the law.

In April 2017, the court found Riley mentally incompetent within the meaning of section 1370 and suspended criminal proceedings.

In May 2017, the court ordered Riley committed to a jail-based competency treatment program. The court authorized the treatment facility to involuntarily administer antipsychotic medication to Riley as prescribed by his psychiatrist.

In a March 2018 report, the probation department noted that Riley had been criminally charged with misdemeanor sexual battery (§ 243.4, subd. (e)(1)) in Fresno County criminal case No. M17915159.

---

**2** The facts underlying Riley's conviction for burglary have been omitted from this opinion as they are not relevant to this appeal.

In May 2018, the court found Riley was restored to competency and the trial court reinstated criminal proceedings.

On July 3, 2018, based on the evidence in case No. M17915159, the court found Riley had violated his probation. Later that same day, in case No. M17915159, the jury found Riley guilty of sexual battery.

On July 11, 2018, the court imposed sentence on Riley's 2014 first degree residential burglary conviction. The court sentenced Riley to the middle term of four years, with credits totaling 905 days. The court imposed the balance of the restitution fine (§ 1202.4) that was applied at the time of sentencing, and lifted the stay as to the probation revocation restitution fine (§ 1202.44). The court also imposed a parole revocation restitution fine (§ 1202.45), which was stayed pending Riley's successful completion of parole. Finally, the court reimposed the $40 court operations assessment (§ 1465.8) and the $30 court facilities assessment (Gov. Code, § 70373).

On July 17, 2018, Riley filed a timely notice of appeal.

## DISCUSSION

### I. Conditional Remand is Warranted for a Mental Health Diversion Hearing

Riley contends his case must be remanded for the lower court to determine whether he should be granted mental health diversion pursuant to section 1001.36. !(AOB 11)! The People argue Riley is ineligible for pretrial mental health diversion because his guilt was adjudicated before section 1001.36 became effective.

Following submission of the parties' briefs, our Supreme Court decided *Frahs*, *supra*, 9 Cal.5th 618, and *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*). We requested supplemental briefing from the parties regarding the effect of our Supreme Court's decisions on Riley's case. After considering the parties' arguments, we conclude Riley is entitled to a conditional remand to request mental health diversion pursuant to section 1001.36.

4.

### A. The Pretrial Mental Health Diversion Statute/*Frahs*

Section 1001.36 was enacted on June 27, 2018, and took effect immediately. (Stats. 2018, ch. 34, §§ 24, 37.) The statute sets forth a pretrial diversion program for defendants diagnosed with qualifying mental health conditions, who are not otherwise excluded based upon the commission of specified crimes. (§ 1001.36, subd. (a).) One of the stated purposes of the statute is the "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety." (§ 1001.35, subd. (a).)

Section 1001.36 defines " 'pretrial diversion' " as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).) If a defendant satisfies the six criteria specified in the statute, the court may postpone criminal proceedings to allow him or her to undergo mental health treatment. (*Id.*, subds. (a), (c).) If the defendant performs satisfactorily in diversion, the court shall dismiss the criminal charges against the defendant that were the subject of the criminal proceedings. (*Id.*, subd. (e).) However, if the court determines that [the defendant] does not meet the criteria set forth by section 1001.36, or if the defendant fails to successfully complete the diversion program, then his or her convictions and sentence shall be reinstated. (*Id.*, subd. (e).)

Our Supreme Court recently held that the mental health diversion statute applies retroactively to all cases not yet final on appeal as of its effective date. (*Frahs, supra*, 9 Cal.5th at p. 630.) *Frahs* held nothing in "the text nor the history of section 1001.36 clearly indicates that the Legislature intended that the *[In re] Estrada* [(1965) 63 Cal.2d 740] rule[, which stated that an amendatory statute lessening punishment for a crime was presumptively retroactive and applied to all persons whose judgments were not yet final

5.

at the time the statute took effect,] would not apply to this diversion program." (*Frahs*, at p. 624.)

## B. Forfeiture

At the time of Riley's sentencing hearing, section 1001.36 had been in effect for two weeks. (Stats. 2018, ch. 34, § 24.) In their supplemental brief, the People contend that as a result, Riley could have requested a pretrial mental health diversion hearing at this time, and his failure to do so resulted in forfeiture of his claim.

As discussed further below, we conclude it is appropriate to consider Riley's argument on the merits, even assuming he has technically forfeited his claim by failing to request a mental health diversion hearing below. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 [an appellate court may review a forfeited claim]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["[a]n appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"]; *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126 [a reviewing court may elect to reach the merits of a claim that has been waived "to forestall a petition for writ of habeas corpus based on a claim of ineffect[ive] counsel"].)

The People assert we should decline to consider Riley's request for pretrial diversion because it would permit him or others to " 'game the system.' " According to the People, a criminal defendant could demand a jury trial and if convicted, he could request pretrial diversion, giving him a "[second] bite[] at the apple."

Our decision to reach the merits of Riley's claim does not support the conclusion that it would be appropriate to depart from the rule of forfeiture in other cases where the defendant could have sought diversion prior to sentencing, but failed to do so. Section 1001.36 was enacted just two weeks prior to Riley's sentencing hearing. Nothing upon this record indicates the parties or the trial court were aware of the newly enacted statute, much less that Riley could be entitled to seek pretrial diversion under the statute. The

6.

plain language of section 1001.36 is ambiguous as to whether a defendant who has already been convicted but not yet sentenced is entitled to seek diversion under its provisions. Defendant's failure to object is therefore excusable under the circumstances. For these reasons, we decline to apply the rule of forfeiture.

### C. Appellant is Entitled to Request a Mental Health Diversion Hearing

The People initially argued Riley was not eligible for pretrial diversion because his case was adjudicated in 2014, before section 1001.36 became effective. We disagree.

Although Riley was convicted of first degree burglary in 2014, the trial court suspended imposition of his sentence and placed him on formal probation. Following his 2018 probation violation, he was sentenced to a prison term of four years. As stated, section 1001.36 was enacted just weeks before Riley's sentencing hearing.

When a trial court suspends imposition of sentence, it does not pronounce a judgment, and a defendant is placed on probation without a judgment pending against him or her. (*People v. Chavez* (2018) 4 Cal.5th 771, 781.) The probation order is considered to be a final judgment only for the "limited purpose of taking an appeal therefrom." (*People v. Superior Court (Giron)* (1974) 11 Cal.3d 793, 796.) The judgment is not considered final for purposes of a defendant's ability to take advantage of ameliorative statutory amendments.

*In re Estrada* (1965) 63 Cal.2d 740 at pages 744-745 (*Estrada*), provides that an amendatory statute imposing lighter punishment can be retroactively and constitutionally applied to a defendant whose "judgment of conviction" is not final when the legislation went into effect. As our Supreme Court recently explained in *McKenzie, supra*, 9 Cal.5th at page 46, "[i]n criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence." Thus, in the context of whether *Estrada* retroactively applies to a judgment, the relevant inquiry is whether the " ' "criminal *proceeding* ... ha[s] not yet reached final

7.

disposition in the highest court authorized to review it." ' " (*McKenzie*, at p. 45, italics added.)

Because Riley's criminal proceeding had not reached finality when section 1001.36 was enacted, he is not foreclosed from seeking retroactive application of its ameliorative provisions by virtue of his failure to appeal from the 2014 order granting him probation.  Moreover, as previously discussed, we decline to find forfeiture from Riley's failure to request a section 1001.36 diversion hearing in the two weeks between the statute's enactment and his sentencing hearing.

*Frahs* held "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when[] … the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs, supra*, 9 Cal.5th at p. 640.)  Riley appears to meet this requirement, and the People do not argue otherwise.

The record indicates Riley was diagnosed with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder" as of January 22, 2018.  Although the record contains no evidence showing whether the "disorder was a significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(1)(B)), evidence of Riley's mental health disorder is sufficient to order that his case be conditionally remanded to the lower court.  On remand, it will be Riley's burden to establish eligibility under all applicable provisions of section 1001.36.  If the trial court finds the statutory prerequisites are met, it may grant relief as authorized by the statute.  (§ 1001.36, subd. (e).)  If the trial court finds Riley is ineligible or unsuitable for diversion, his

conditionally reversed conviction and sentence shall be reinstated. (*Frahs, supra*, 9 Cal.5th at pp. 640-641.)[3]

## II. The Court-Imposed Fines and Assessments

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the Court of Appeal for the Second District, Division Seven, held that imposing assessments and a fine on an indigent defendant violated due process-based rights that ensure access to the courts and bar incarceration based on a defendant's nonpayment of fines due to indigence. (*Id.* at pp. 1167-1168, 1172.) Relying principally upon *Dueñas* in his opening brief, Riley asserts the court-imposed restitution fines and nonpunitive assessments were improper as the court failed to hold a hearing on his ability to pay. He requests this court strike the assessments and stay the restitution fines unless the People demonstrate he has an ability to pay them. In light of our conclusion that Riley is entitled to a mental health diversion hearing pursuant to section 1001.36, this issue is moot. Riley may, if he chooses, raise his constitutional challenge to the fines and fees imposed in the trial court on remand.

## III. Appellant is Not Entitled to Additional Presentence Conduct Credits

Riley asserts he is entitled to additional section 4019 presentence conduct credits for the time he spent in the Jail Based Competency Treatment (JBCT) program receiving restoration of competency treatment. According to Riley, because he received treatment while " 'confined in or committed to a county jail,' " he is entitled to section 4019

---

[3] In their supplemental brief, the People suggest they should be permitted to withdraw from the plea agreement if this court remands Riley's case for a mental health diversion eligibility hearing. We are not persuaded. To permit the People to withdraw from a plea agreement where a defendant seeks to avail himself of the therapeutic benefits of section 1001.36 would frustrate the Legislative intent for the diversion statute to apply as broadly as possible. (See *People v. Stamps* (2020) 9 Cal.5th 685, 704, discussing *Harris v. Superior Court* (2016) 1 Cal.5th 984, 992 [addressing similar concerns in the context of Proposition 47 petitions for resentencing].) The threat of facing additional charges and a greater maximum prison term may cause a defendant to forgo participation in a mental health diversion program.

conduct credits. Riley further contends he should have resumed earning conduct credits on January 30, 2018—when the court received his section 1372 competency certification—and not on January 31, 2018. The People disagree with both claims, as do we.

**A. Riley is Not Entitled to Section 4019 Credits for Time Spent in the JBCT Program**

*1. Presentence Conduct Credits*

"Presentence and postsentence credit are distinct from one another and governed by 'independent ... schemes.' " (*People v. Brown* (2020) 52 Cal.App.5th 899, 902, citing *People v. Buckhalter* (2001) 26 Cal.4th 20, 30.) The issue before this court involves presentence credits. Specifically, presentence credits based upon work and good behavior. (§ 4019.)

In addition to receiving actual credit for time served in custody (§ 2900.5), which accumulates from a defendant's time spent in custody, a defendant is entitled to credit for work and good behavior during their term of presentence incarceration. (See *People v. Cooper* (2002) 27 Cal.4th 38, 40.) Section 4019 specifies the rate at which conduct credit may be accrued by defendants in local custody. "Conduct credit ordinarily is earned in the amount of two days for every four days the defendant is in actual presentence custody." (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

"Section 4019 provides that its formula for good behavior credit applies to persons detained, prior to felony sentencing, in specifically enumerated *local facilities*" (*People v. Buckhalter*, *supra*, 26 Cal.4th at p. 30, fn. 6), including when "a prisoner is confined in or committed to a county jail ... or a city jail." (§ 4019, subd. (a)(1).) When a defendant is sentenced to prison, the court calculates the defendant's accumulated credits for time served and conduct credits. These credits are subsequently reflected in the abstract of judgment. (*People v. Duff, supra*, 50 Cal.4th at p. 793.)

### 2. Section 4019 Conduct Credits Where a Defendant is Found Incompetent to Stand Trial

A defendant who is deemed mentally incompetent to stand trial but is subsequently restored to competency, convicted, and sentenced to prison is entitled to credit for all days spent in presentence custody. (*People v. Callahan* (2006) 144 Cal.App.4th 678, 684.) This includes time spent in a state hospital for restoration of competency treatment. (*Ibid.*) However, in *People v. Waterman* (1986) 42 Cal.3d 565 (*Waterman*), our Supreme Court held that a defendant is not entitled to section 4019 conduct credit for time spent in nonpenal institutions, such as a state hospital, while receiving treatment for the restoration of competency. The court explained, the therapeutic goal of restoring a defendant to competency would be artificially shortened, and therefore thwarted, "if mere institutional good behavior and participation automatically reduced the therapy period." (*Waterman*, at p. 570.)

Thus, the question presented here is whether Riley—while receiving restoration of competency treatment in the JBCT program—was similarly situated to a patient receiving treatment for the restoration of competency at the Department of State Hospitals.

### 3. People v. Waterman

In *Waterman*, *supra*, 42 Cal.3d 565, the trial court found the defendant incompetent to stand trial and committed him to Patton State Hospital. He was subsequently restored to competency and the court reinstated criminal proceedings. Although the court awarded the defendant credit for actual time served for the period of time he was in the state hospital for restoration of competency treatment, the court denied his motion for section 4019 conduct credits. On appeal, the defendant argued the trial court erred in denying his motion. (*Waterman*, at pp. 567-569.)

Our Supreme Court disagreed, concluding, "[t]he criminal-incompetence statute [(§ 1370] does not expressly allow such conduct credit." (*Waterman, supra*, 42 Cal.3d at p. 569.) The court also rejected the defendant's assertion that he was entitled to section

11.

4019 under equal protection principles. (*Ibid*.) According to the *Waterman* court, "the substantial disparities between the treatment goals for incompetents and [California Rehabilitation Center (CRC)] patients amply justif[ies] the credit distinctions drawn by the Legislature." (*Ibid*.)

The *Waterman* court explained, "CRC affords *postconviction* rehabilitative treatment related to a finding of criminal conduct. The incompetence program, on the other hand, is a special form of *pretrial* detention not at all concerned with criminal rehabilitation; its purpose is restoration of a specific mental state without which the criminal process cannot proceed. [¶] ... [¶] [U]nlike CRC committees, they have been found to harbor a 'mental disorder' or defect. This condition precludes them from comprehending or assisting in the criminal proceedings. [Citation.] Unless restored to competence, they cannot be tried [citation], and the criminal justice system will be frustrated. As with other *mentally disordered* committees, the Legislature may decide that important therapeutic goals are not served by a conduct-credit system, even if nondisordered addict-offenders may earn such credits during their CRC confinement." (*Waterman*, *supra*, 42 Cal.3d at pp. 569-570.)

The *Waterman* court further reasoned the defendant was not entitled to section 4019 conduct credit because "[t]he goal of treatment for incompetence seems particularly inconsistent with an incentive-credit system during therapy. The purpose of confinement is to restore the mental ability to stand trial.… [T]hat goal would be hindered if mere institutional good behavior and participation automatically reduced the therapy period." (*Waterman, supra*, 42 Cal.3d at pp. 569-570, fns. omitted.)

### 4. The JBCT Program

Riley does not address *Waterman* in his opening brief. He contends he is entitled to section 4019 conduct credit because he was confined in or committed to a county jail while in the JBCT program. However, *Waterman* makes clear that the location of the

treatment program is not determinative of whether a defendant is entitled to accrue presentence conduct credit. Rather, the goal of the program must be consistent with the purpose of section 4019. As discussed further below, we conclude the therapeutic goal of the JBCT program would be thwarted if defendants in the program were permitted to accumulate section 4019 conduct credits.

Section 1370 applies when a defendant is found mentally incompetent, resulting in the suspension of criminal proceedings. (§ 1370, subd. (a)(1)(B).) Pursuant to section 1370, subdivision (a)(1)(B)(i), the court has authority to commit the defendant to the Department of State Hospitals (DSH).

Here, Riley was committed to the DSH for competency treatment in May 2017. Effective June 2017, subdivision (a)(1)(B)(i) of section 1370 provided the following:

> "[t]he court shall order that the mentally incompetent defendant be delivered by the sheriff to a State Department of State Hospitals facility, *as defined in Section 4100 of the Welfare and Institutions Code*, for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, including a community-based residential treatment system established pursuant to Article 1 (commencing with Section 5670) of Chapter 2.5 of Part 2 of Division 5 of the Welfare and Institutions Code if the facility has a secured perimeter or a locked and controlled treatment facility, approved by the community program director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status as specified in Section 1600." (Stats. 2017, ch. 17, § 30, effective June 27, 2017, italics added.)

The 2017 amendment above defined the DSH's jurisdiction over facilities by reference to Welfare and Institutions Code section 4100. (Welf. & Inst. Code, § 4100, subds. (a)-(e).) Subdivision (g) of section 4100 of the Welfare and Institutions Code provides that the DSH's jurisdiction extends to "[a] county jail treatment facility under contract with the State Department of State Hospitals to provide competency restoration services."

13.

In addition, subdivision (a)(1)(B)(i) of section 1370 provided that in addition to the facilities identified in Welfare and Institutions Code section 4100, the court may commit a defendant found incompetent to stand trial to "any other available public or private treatment facility." A "treatment facility" includes county jails. (§ 1369.1, subd. (a).) Thus, when a court commits a defendant who is incompetent to stand trial to the DSH for treatment, the DSH has jurisdiction to place the defendant in a jail treatment facility for restoration of competency treatment. When this occurs, a defendant is in jail subject to the jurisdiction of the DSH under section 1370.[4]

### 5. *Analysis*

As our Supreme Court stated in *Waterman*, "[t]he goal of treatment for incompetence seems particularly inconsistent with an incentive-credit system during therapy. *The purpose of confinement is to restore the mental ability to stand trial. [T]hat goal would be hindered if mere institutional good behavior and participation automatically reduced the therapy period.*" (*Waterman, supra*, 42 Cal.3d at p. 570, italics added.) As a result, the court held that a defendant is not entitled to receive section 4019 conduct credits for time spent in a state hospital while receiving treatment for the restoration of competency. (*Waterman*, at p. 571.)

---

[4]     On September 30, 2018, then Governor Brown signed Senate Bill No. 1187 into law. (2017-2018 Reg. Sess.) (Senate Bill No. 1187.) The bill became effective on January 1, 2019. Section 4019, subdivision (a)(8) was added by Senate Bill No. 1187 to specifically provide that inmates receiving competency treatment in state prison could receive conduct credits. However, the new subdivision (a)(8) was added to the version of section 4019 that already contained subdivision (j): "This section shall become operative *on January 1, 2021.*" (Stats. 2018, ch. 1008, § 5, italics added.) Riley does not argue Senate Bill No. 1187's amendments apply to him. Although we do not address this issue as a result, we believe *People v. Brown* (2012) 54 Cal.4th 314 forecloses such a conclusion. There, our Supreme Court addressed amendments to section 4019 that increased presentence credit. (*People v. Brown, supra*, at pp. 317-318.) The court held the presumption of retroactivity did not apply because increasing presentence credit did not reduce punishment for a crime. (*Id.* at p. 318.)

14.

Applying this principle to the instant case, we conclude the trial court did not err by failing to award Riley section 4019 conduct credit for the period of days he received restoration of competency treatment in the JBCT program. The purpose of the JBCT program is therapeutic. "[T]hat goal would be hindered if mere institutional good behavior and participation automatically reduced the therapy period." (*Waterman, supra*, 42 Cal.3d at p. 570.) Additionally, "[a]n incentive-credit system" that awards conduct credits is not compatible with the treatment of criminal incompetents because "persons so ill that they cannot understand or assist trial proceedings may often be so disoriented that they are incapable of responding to credit incentives." (*Waterman, supra*, 42 Cal.3d at p. 570 & fn. 3.) We therefore conclude Riley is not entitled to section 4019 conduct credits for the period he received restoration to competency treatment while in the JBCT program.

**B.      Appellant is Not Entitled to Additional Conduct Credit Based Upon His Restoration of Competency Date**

Riley further contends he should have resumed earning conduct credits on January 30, 2018, the date the court received the section 1372 competency certification, and not on January 31, 2018, the date relied upon by the trial court based upon the probation officer's report. We agree with Riley's assertion that he should have resumed earning conduct credits as of January 30, 2018, the date the court received the competency certification. However, we do not agree that he is entitled to additional credits based upon this discrepancy of one day.

Section 4019, subdivision (f) provides: "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every *two days* spent in actual custody." (Italics added.) Thus, Riley must have spent two days in actual custody to get the benefit of this provision. He is therefore not entitled to any additional credit.

15.

## DISPOSITION

The judgment is conditionally reversed and the matter is remanded for further proceedings. On remand, the trial court shall conduct a mental health diversion eligibility hearing pursuant to section 1001.36 and *Frahs, supra*, 9 Cal.5th 618. If the trial court finds Riley meets the eligibility requirements of section 1001.36, the court may grant relief as provided in the statute.

In the event Riley is found eligible and successfully completes a diversion program, the court shall dismiss the charges against him. However, if the court finds Riley does not meet the requirements of section 1001.36, or if he fails to successfully complete the diversion program, then his conviction and sentence shall be reinstated. We express no views about whether Riley will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.